C. D. COLBERT et al v. Charles V. GANN et ux

5-5108                                    448 S. W. 2d 649

Opinion delivered January 12, 1970

*Douglas Bradley,* for appellants.

*Eugene Sloan,* for appellee.

Conley Byrd, Justice. In 1955 appellees Charles V. Gann and Edith E. Gann purchased "all that part of the S½ SW¼ of Section 22, T. 15 N., R. 3 E. lying east of the Culberhouse Public Road, containing 15 acres more or less." Based upon the assumption that the area contained only 15 acres, they conveyed the five acres off the north end to Elmo Russell and wife in 1960. The boundary line between them was partially marked by a fence running in a southeast-northwest direction. In March 1966, the Ganns advertised for sale a house and five acres of ground. Pursuant to the advertisement, appellants John P. Colbert and Myrtle Colbert, his wife, purchased the house and received a deed which de-

scribed the property as the north five acres of the south ten acres of that part of the S½ SW¼ of Section 22, T. 15 N., R. 3 E. lying east of Culberhouse Public Road in Craighead County. During the same month, appellees started construction of a new house on the remaining lands.

Appellees rented the house from Colbert until June 1966, when Mr. and Mrs. Colbert conveyed the property by the same description to their son and daughter-in-law, C. D. and Frankie Colbert. Thereafter, appellees rented the house from the son until they moved into their new house around the first of November, 1966.

After appellees had moved into their new house, C. D. Colbert suggested that the house was built on his property and caused Clay Kenward to survey the property. At this time it was discovered that there was 19.52 acres lying east of the Culberhouse Public Road instead of 15 acres as recited in appellees' original deed.

The Kenward survey showing the location of the fences and houses here involved is as follows:

Based upon the survey C. D. Colbert, et ux, brought suit against appellees to remove the new house as an encroachment on their land. Appellees counterclaimed and cross complained, bringing in John P. Colbert et ux, and asked that the deed descriptions be reformed to correctly describe the property sold to the Colberts. An alternative plea requested that the Colbert house, which according to the survey encroached on appellees' property by 29 feet, be removed. The trial court characterized the controversy as a boundary dispute, found that the land which appellees intended to convey and appellants intended to buy was the 5.3 acres between the two fences and decreed that the descriptions in the two deeds should be corrected to so read.

For reversal appellants argue that reformation could not be had because appellees' grantee no longer owned the property, having conveyed to a bona fide purchaser.

The record shows that appellees had advertised for sale a house and five acres of land. All parties concede that appellees and John Colbert contacted each other as a result of the newspaper advertisement.

Appellee Charles V. Gann testified that he pointed out the Elmo Russell fence and the fence to the south thereof as the north and south boundaries of the five acres that were to go with the house. He said that their agreement was that if there were not five acres between the two fences, he was to set the south fence over until John P. Colbert did get five acres. Pursuant to the agreement reached, John Colbert gave appellees a $500 check for a down payment. Gann says that he then took his deed to an abstracter and told him that he was conveying to the Colberts the five acres next to Elmo Russell. Thereafter the Ganns and John Colbert's daughter met at the abstracter's office and consummated the sale upon the description drawn by the abstracter. While the Ganns were renting the property, they learned of the

sale to the son, C. D. Colbert. Sometime in October C. D. Colbert and his son disked up the area between the two fences and sowed it in something.

Mr. John Colbert testified that Mr. Gann represented to him that the house was on this land, but that he refused to purchase the land between the two fences until Gann agreed to give him a deed to the north five acres of the south 10 acres—*i. e.,* he thought Mr. Gann just owned ten acres and he was getting the north end of the ten. When he sold the land to his son, he represented that the house was on the description drawn by the abstracter. On cross examination Mr. Colbert stated that he expected the north five acres to go to the Russell line and that he would not have bought the property if the house had not been located on it—that was the reason he had the girl write on the $500 down payment check "house and five acres." He further testified that he did not know that Mr. Gann was building his house on the described land until his son had it surveyed.

Mr. C. D. Colbert says that he was living in California when he purchased the property and that he never saw the property until around October 1, 1966, approximately three months after the purchase. On cross-examination C. D. Colbert readily admitted that according to his survey 29 feet of his house is north of the five acres he now claims that he bought, but now says that the house he bought was on the land when he bought it. He further testified that he bought the house and the five acres that the deed called for; that in October he disked up the land between the two fences; and that when he was disking the land, he thought it was his land but that he does not think so now.

As between appellees and John Colbert it is obvious that the abstracter did not properly describe the lands that appellees intended to sell or the lands that John Colbert intended to buy. When viewed in light of the dealings between John P. and his son C. D. Colbert and

the fact that C. D. at first took possession of the property between the two fences, the evidence is most convincing that that was the property intended to be conveyed by the one and received by the other. Furthermore since C. D. Colbert at first took possession of the property between the two fences and at the time thought that was his property, we do not see how he is in the position of a bona fide purchaser for purpose of preventing a correction of an erroneous description in the deeds under which he holds.

In *Tanner* v. *Manos*, 160 Ark. 293, 254 S. W. 676 (1923), Mr. & Mrs. Hogan owned a sixty acre tract. In mortgaging the property to Manos, the mortgage while describing only thirty acres recited a total of sixty acres. Thereafter the Hogans obtained a divorce in which Mr. Hogan conveyed the property to his wife who subsequently conveyed to Tanner. In upholding a reformation of the mortgage description to describe the sixty acres as against Tanner, a subsequent grantee, we pointed out that it was sufficient to show facts which put him upon notice of the error. We know of no reason why that holding should not be applied to C. D. Colbert et ux, who at first admittedly took possession of the property between the two fences.

For the reasons stated, the judgment is affirmed.